CSC HOLDINGS, INC., Plaintiff,

v.

Joseph KELLY, Defendant.

No. 03–CV–2337(ADS).

United States District Court,
E.D. New York.

July 1, 2005.

_____

Lefkowitz, Louis & Sullivan, LLP by Shaun K. Hogan, Esq., Patrick J. Sullivan, Esq., Michael D. Cassell, Esq., and Melinda M. Dus, Esq., Jericho, NY, for Plaintiff.

Joseph Kelly, Massapequa Park, NY, Pro Se Defendant.

## ORDER

SPATT, District Judge.

Plaintiff CSC Holdings, Inc. ("Cablevision" or the "Plaintiff"), is a cable television operator. Cablevision is authorized to operate and maintain cable television systems in parts of New York State, including areas within the Eastern District of New York. Cablevision commenced this case on May 9, 2003 alleging that the defendant Joseph Kelly (the "Defendant") illegally intercepted the Plaintiff's cable television programming service in violation of 47 U.S.C. §§ 553(a)(1) and 605(a). Presently before the Court is Cablevision's unopposed motion for summary judgment seeking entry of a permanent injunction, damages, and attorneys' fees and costs.

## I. BACKGROUND

### A. Factual Background

Cablevision and its affiliates own, operate, and maintain cable television systems on which they transmit cable television signals for use by its subscribers. Cablevision transmits television signals that include basic, premium, and pay-per-view content. In order to secure its various signals from theft, Cablevision utilizes the technological measure of encoding or scrambling the premium and pay-per-view services. Subscribers who are authorized to view such content are provided a converter that is programmed to descramble the signal and permit the subscriber to view the content of the signal. Despite these security measures, it is possible to steal the signal by use of "pirate" cable television decoding devices that are designed to descramble a cable company's signal without payment or authorization.

One such device that can be used to descramble cable signals in known as the "J Cube" device. A "J Cube" is a non-addressable, fully descrambling "pirate"

cable television decoding device. The device was designed to work with General Instrument's "Jerrold" technology used by Cablevision. Cablevision asserts that if the "J Cube" device is attached to its system it would allow a subscriber to view all of its premium and pay-per-view services without payment or authorization. These devices were once sold by North Tech, Inc., a now defunct seller of pirate decoding devices formerly based in Quincy, Massachusetts.

North Tech was subject to a criminal investigation commenced by the Massachusetts Attorney General in which documents were seized that included customer records. One of the records seized is an invoice that shows the sale of a "CFT 2200" from North Tech to a Joseph Kelly, residing at 2655 Ocean Avenue, Seaford, New York, for the sum of $126.00. A "CFT 2200" is a device legitimately manufactured by Motorola Broadband, formerly General Instrument, and only sold to cable television companies. Cablevision claims that such devices are not sold to individuals.

**B. Procedural Background**

Cablevision commenced this action on May 9, 2003, asserting that the Defendant purchased and used the "J Cube" device to steal services. Although the Defendant appeared for a deposition, he failed to appear in court for numerous pre-trial conferences and failed to respond to the Plaintiff's discovery requests. Upon motion by the Plaintiff, Magistrate Judge E. Thomas Boyle entered an order pursuant to Federal Rules of Civil Procedure 36 and 37 deeming all unanswered Requests for Admission admitted. As a result, the following facts were established: (1) the Defendant or someone he resides with was a subscriber to Cablevision's cable service; (2) the Defendant knew that the law and cable subscription agreements prohibit tampering with the cable television opera-

tor's equipment and the unauthorized reception of services; (3) the Defendant knew that decoders can be used to receive scrambled cable television services; (4) the Defendant resided at 2655 Ocean Avenue, Seaford, New York, at the time the item was purchased and delivered; (5) the Defendant ordered and received the device from North Tech; and (6) the Defendant connected and used the device on Cablevision's cable system to receive premium and pay-per-view services without paying for such services.

On October 5, 2004, the Defendant appeared at a pre-trial conference in which a schedule for summary judgment was set. On November 11, 2004, the Plaintiff filed the instant motion for summary judgment along with the "Notice to Pro Se Litigant Opposing Summary Judgment" as required under Local Rule 56.2. The Defendant did not file any opposition.

## II. DISCUSSION

### A. Summary Judgment Standard

When deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir.2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n. 11, 106 S.Ct. 1348, 1356 n. 11, 89 L.Ed.2d 538 (1986)) (quoting Fed.R.Civ.P. 56(e)). Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Where, as here, the nonmoving party has chosen the "perilous path" of failing to respond to a motion for summary judgment, the court must still examine "the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir.2001). "[I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion." *Vt. Teddy Bear Co. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir.2004).

In addition, when the nonmoving party is pro se, summary judgment may be granted only if the undisputed facts "show that the moving party is entitled to a judgment as a matter of law." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). Also, the Second Circuit has cautioned that a district court may only grant the motion if the pro se party has received notice that failure to respond to the motion "will be deemed a default." *Id.* As stated above the defendants served a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment." Also, the Plaintiff affixed a copy of Fed.R.Civ.P. 56 to the Notice.

## B. The Communications Act Claims

Cablevision alleges that the Defendant violated 47 U.S.C. §§ 553(a)(1) and 605(a) of the Communications Act. 47 U.S.C. § 553(a)(1) states, "No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." *Id.* Further, 47 U.S.C. § 553(c)(1) allows any person aggrieved by a violation of § 553(a) a private

right of action to seek an injunction, damages, and attorneys' fees and costs.

In addition, 47 U.S.C. § 605(a) provides, in relevant part, "No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." *Id.* Further, 47 U.S.C. § 605(e) sets forth penalties a private party may recover in an action against a person who is in violation of § 605(a).

The affidavit and documentary evidence, in conjunction with the facts established by the Defendant's admissions, establish the elements necessary for the Plaintiff to carry its burden in this motion for summary judgment. Cablevision has explained that it is the business protected by the statute and produced the invoice showing the Defendant's purchase of a device from North Tech. Also, the company from which the device was bought was in the business of selling pirate devices, and the device listed on the Defendant's invoice is not the type of device sold to individuals. Further, Cablevision has shown that the Defendant was not a subscriber to any of Cablevision's premium or pay-per-view services. Without any opposition from the Defendant on these points, it is reasonable to conclude that the Defendant bought the device to steal premium services from the Plaintiff.

In addition, the affidavits submitted by the Plaintiff and the relevant case law both show that the "J Cube" device has only one purpose, that is, the interception of cable television programming services. *Intermedia Partners Southeast, Gen. Pshp. v. QB Distribs. L.L.C.,* 999 F.Supp. 1274, 1281 (D.Minn.1998) ("Defendants have failed to offer any explanation for

why a subscriber would purchase their products for such a legal purpose, when the cable operator supplies the equipment one needs for authorized access to premium and pay-per-view services.").

The admissions that resulted by the Defendant's failure to comply with discover, after repeated warnings from the Magistrate Judge only reinforces this conclusion. The admissions meet each element necessary to establish a violation of both sections of the Communication Act.

For these reasons, the Court finds that the evidence in the record is sufficient to demonstrate that there is no material issue of fact and that Cablevision is entitled to judgment as a matter of law on all of its claims.

## III. CONCLUSION

Based on the foregoing it is hereby

**ORDERED**, that the Plaintiff's motion for summary judgment is **GRANTED**; and it is further

**ORDERED**, that this matter is **REFERRED** to Magistrate Judge E. Thomas Boyle for the purpose of holding an inquest as to damages, fees, and the propriety of issuing a permanent injunction.

**SO ORDERED.**